# In the United States Court of Federal Claims

No. 20-1690C

(Filed:  March 15, 2022)

|  |  |
|---|---|
| **TONY JORDAN,** | ) |
|  | ) |
| *Plaintiff,* | ) |
|  | ) |
| **v.** | ) |
|  | ) |
| **THE UNITED STATES,** | ) |
|  | ) |
| *Defendant.* | ) |
|  | ) |

*Tony Jordan*, *pro se*, Valrico, FL.

*Michael D. Austin*, United States Department of Justice, Civil Division, Washington, D.C., for Defendant.  With him on the briefs were *Brian M. Boynton*, Acting Assistant Attorney General, Civil Division, *Martin F. Hockey, Jr.*, Acting Director, and *Allison Kidd-Miller*, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C.  Of counsel was Juliana B. Pierce, Defense Finance and Accounting Service, General Counsel Office.

## OPINION AND ORDER

**SOLOMSON, Judge**.

On November 20, 2020, Plaintiff, Tony Jordan, a retired Army reserve officer, proceeding *pro se*, filed his original complaint against Defendant, the United States. ECF No. 1 ("Compl.").  The government moved to dismiss Mr. Jordan's complaint pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC").  ECF No. 11 ("Def. Mot.").  The Court permitted Mr. Jordan to file an amended complaint, ECF Nos. 13, 14 ("Am. Compl."), which the government also moved to dismiss pursuant to RCFC 12(b)(1), ECF No. 17 ("Def. Mot. Dismiss Am. Compl.").  The parties filed timely response briefs.  ECF Nos. 18 ("Pl. Resp."), 19 ("Def. Reply").  On September 20, 2021, Mr. Jordan filed a motion for leave to respond to the government's reply, ECF No. 20, which this Court granted, ECF Nos. 21, 22 ("Pl. Reply").

The singular focus of Mr. Jordan's several "causes of action" is a debt of $88,578.33 which Mr. Jordan claims the Defense Finance and Accounting Authority ("DFAS") unlawfully withheld from his military pay over a period of five years. Compl. at 2; Am. Compl. ¶¶ 54–58.[1]  The government contends that this Court lacks jurisdiction to decide Mr. Jordan's claim because he failed to file his complaint within the six-year statute of limitations.  *See* 28 U.S.C. § 2501; Def. Mot. at 1; Def. Mot. Dismiss Am. Compl. at 2.

For the reasons explained below, the Court agrees with the government and holds that Mr. Jordan's claim is untimely pursuant to the applicable statute of limitations, *see* 28 U.S.C. § 2501.  Accordingly, the Court **GRANTS** the government's motion to dismiss Mr. Jordan's amended complaint for lack of jurisdiction.

## I.   JURISDICTION AND STANDARD OF REVIEW

Courts hold the pleadings of *pro se* plaintiffs to a less rigorous standard than those of represented parties.  *See Roche v. U.S. Postal Serv.*, 828 F.2d 1555, 1558 (Fed. Cir. 1987) ("Pro se petitioners are not expected to frame issues with the precision of a common law pleading."); *Perry v. United States*, 149 Fed. Cl. 1, 9–10 (2020) ("Courts treat a *pro se* plaintiff's pleadings with less scrutiny and give them a more liberal construction than pleadings prepared by counsel." (citing *Castro v. United States*, 540 U.S. 375, 381 (2003))), *aff'd*, 2021 WL 2935075 (Fed. Cir. July 13, 2021).  Accordingly, the Court construes all of Mr. Jordan's legal arguments in the most generous, plausible manner. *Moss v. United States*, 101 Fed. Cl. 611, 615 (2011).

*Pro se* plaintiffs cannot, however, evade this Court's jurisdictional requirements. *See Ex parte McCardle*, 74 U.S. 506, 514 (1868) ("Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause."); *Kelley v. Sec'y, U.S. Dep't of Labor*, 812 F.2d 1378, 1380 (Fed. Cir. 1987) (noting that "leniency with respect to mere formalities should be extended to a *pro se* party," but "a court may not similarly take a liberal view of [a] jurisdictional requirement and set a different rule for *pro se* litigants only"); *Hale v. United States*, 143 Fed. Cl. 180, 184 (2019) ("[E]ven *pro se* plaintiffs must persuade the court that jurisdictional requirements have been met."); RCFC 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

Generally, "[t]he jurisdiction of the Court of Federal Claims is defined by the Tucker Act, which gives the court authority to render judgment on certain monetary claims against the United States."  *RadioShack Corp. v. United States*, 566 F.3d 1358, 1360 (Fed. Cir. 2009).  The Tucker Act, 28 U.S.C. § 1491(a)(1), provides this Court with

---

[1] Mr. Jordan's amended complaint numbers each paragraph, but his original complaint numbers only pages; this opinion address arguments presented in both complaints.

jurisdiction "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1); *see also Roth v. United States*, 378 F.3d 1371, 1384 (Fed. Cir. 2004) (noting that the Tucker Act permits "actions pursuant to contracts with the United States, actions to recover illegal exactions of money by the United States, and actions brought pursuant to money-mandating statutes, regulations, executive orders, or constitutional provisions" to be brought in the Court of Federal Claims). The Tucker Act, however, "does not create a substantive cause of action." *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc in relevant part). Moreover, "[n]ot every claim invoking the Constitution, a federal statute, or a regulation is cognizable under the Tucker Act." *United States v. Mitchell*, 463 U.S. 206, 216 (1983). With respect to "money-mandating" claims, the plaintiff must identify a law that "can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained." *Id.* at 217 (quoting *United States v. Testan*, 424 U.S. 392, 400 (1976)). Illegal exaction claims allege that money was "improperly paid, exacted, or taken from the claimant," *Eastport S.S. Corp. v. United States*, 372 F.2d 1002, 1007 (Ct. Cl. 1967), and do not need to identify a money-mandating statute. *Boeing Co. v. United States*, 968 F.3d 1371, 1384 (Fed. Cir. 2020); *Perry*, 149 Fed. Cl. at 32.

The Court of Federal Claims may exercise jurisdiction over a claim against the United States only if the plaintiff files suit within six years of when the claim accrues. 28 U.S.C. § 2501 ("Every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues."). The Supreme Court has "long interpreted" this Court's limitations statute as "absolute" and "jurisdictional." *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 134 (2008). Consequently, the statute of limitations is not subject to equitable tolling. *Id.* at 133–39 (discussing the history of the Court of Federal Claims' statute of limitations and concluding that it does not permit equitable tolling); *see also Young v. United States*, 529 F.3d 1380, 1384 (Fed. Cir. 2008) ("[E]quitable tolling . . . is foreclosed by *John R. Sand & Gravel*, wherein the Court held that the Tucker Act's statute of limitations is in the 'more absolute' category that cannot be waived or extended by equitable considerations." (quoting *John R. Sand & Gravel Co.*, 552 U.S. at 133–34)).

Plaintiffs "bear[] the burden of establishing the court's jurisdiction over [their] claims by a preponderance of the evidence." *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011). This includes establishing that the complaint was timely filed pursuant to the statute of limitations. *Alder Terrace, Inc. v. United States*, 161 F.3d 1372, 1376–77 (Fed. Cir. 1998). To determine jurisdiction, this Court generally "must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff." *Trusted Integration*, 659 F.3d at 1163. The Court is not limited to the pleadings, however, when a motion to dismiss disputes

jurisdictional facts. *Freeman v. United States*, 875 F.3d 623, 627 (Fed. Cir. 2017) ("When . . . a motion to dismiss 'challenges the truth of jurisdictional facts,' the Court of Federal Claims 'may consider relevant evidence in order to resolve the factual dispute.'" (quoting *Banks v. United States*, 741 F.3d 1268, 1277 (Fed. Cir. 2014))). This Court "will rely on these matters [only] to the extent that they allow the court to determine whether it has jurisdiction over this case." *Lechliter v. United States*, 70 Fed. Cl. 536, 543 (2006).

## II.  FACTUAL AND PROCEDURAL BACKGROUND

The Court begins with the facts as alleged in Mr. Jordan's amended complaint and related filings.[2]  Mr. Jordan served in the United States Army Reserves "in various capacities" from early 1981 to late 2014. Am. Compl. ¶ 1.  During that period, from October 2, 2009, through October 27, 2014, he held the rank of lieutenant colonel. Compl. at 1.

Between 2003 and 2008, Mr. Jordan served approximately four years and six months of active duty at MacDill Air Force Base in Florida.  Am. Compl. ¶ 15.  During this active-duty tour, Mr. Jordan was the subject of an investigation regarding a "possible lodging fraud concerning plaintiff's travel vouchers submitted incidental to his continuous orders for the period May 1, 2004 through April 29, 2008."  Am. Compl. ¶ 16.  Notwithstanding this allegation, Mr. Jordan avers that the investigation concluded he was *underpaid* regarding his housing for this time period.  Am. Compl. ¶¶ 22, 31.  In February 2009, DFAS established a debt of $106,051.21 against Mr. Jordan "for the period May 1, 2004 through April 29, 2008."  Am. Compl. ¶¶ 26–27.  On July 10, 2009, "DFAS issued two debt notices" to Mr. Jordan "in the amount of $106,051.21."  Am. Compl. ¶ 27.  On October 7, 2009, Mr. Jordan "received a Leave and Earnings Statement . . . revealing that a collection action was initiated in his pay records in the amount of $750.00 per pay period for a travel debt of $106,051.21." Am. Compl. ¶ 36. [3]

---

[2] For the purpose of resolving the pending motion to dismiss, the facts alleged in a plaintiff's operative complaint are assumed to be true, and do not constitute factual findings by the Court. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Am. Bankers Ass'n v. United States*, 932 F.3d 1375, 1380 (Fed. Cir. 2019).

[3] The government, via an attachment to its response brief, explains that DFAS determined Mr. Jordan's debt followed an Army Criminal Investigation Command investigation, which concluded that Mr. Jordan submitted dozens of monthly travel vouchers while on active duty to claim "reimbursement for renting an apartment . . . supported by false receipts . . . while he actually lived in a residence that he owned[.]"  ECF No. 19-2, Defense Office of Hearings and Appeals ("DOHA") Appeal Decision of February 19, 2015 at 4.  As a result of the vouchers Mr. Jordan submitted, the government contends, the Army paid Mr. Jordan a total of $106,051.21 in lodging expenses from May 2004 to April 2008, *id.* at 3; DFAS later audited Mr. Jordan's travel vouchers and established a debt against Mr. Jordan to remedy Mr. Jordan's overpayment, *id.* at

To satisfy the debt, DFAS deducted money from each of Mr. Jordan's military paychecks from October 2009 through October 2014, withholding a total of $88,578.33, at which point DFAS appears to have stopped deducting money.  Am. Compl. ¶ 43 ("From October 9, 2009 thr[ough] October 27, 2014, DFAS . . . initiat[ed] collection actions[.]"); Am. Compl. ¶ 57 ("From October 2, 20[0]9 thr[ough] October 27, 2014, DFAS failed to deliver without deduction the basic pay to Plaintiff[,] which he was entitled to for the performance of service during those periods."); *see also* Compl. at 2 ("On October 2, 2009, DFAS created or established a debt . . . and over the course of the next 5 plus years (through on or about November 27[,] 2014) unlawfully withheld $88,578.33 from plaintiff's current military pay[.]").[4]

The gravamen of Mr. Jordan's claim is found in his original complaint, in which he alleges that DFAS established the debt "without specific legal authority" and "unlawfully withheld $88,578.33 from plaintiff's military pay in violation of 5 U.S.C. § 5514."  Compl. at 2.  He also alleges that DFAS "is currently reporting this invalid debt to the three major credit reporting agencies," which "is an ongoing violation of 15 U.S.C. § 1692 subject to money mandated statutory penalties."  Compl. at 2.  Accordingly, Mr. Jordan requests that the Court:  (1) "Order DFAS to release Plaintiff's military pay in the amount of $88,578.33"; (2) "Order DFAS to pay [a] statutory penalty for each occurrence of reporting to the credit bureaus"; and (3) "Issue a writ of Mandamus under 28 U.S.C. § 1651 to compel agency action in accordance with 5 U.S.C. § 5514, 37 U.S.C § 204 and provide Plaintiff judicial remedy concerning pay and credit[.]"  Compl. at 3.

In his amended complaint, Mr. Jordan asserts four causes of action in claiming he is entitled to a return of the debt DFAS assessed against him.  In particular, Mr. Jordan alleges:  (1) DFAS violated both the Military Pay Act, 37 U.S.C. § 204, and 37 U.S.C. § 1014 ("Payment date for pay and allowances"), by withholding money from Mr. Jordan, Am. Compl. ¶¶ 54–58; (2) DFAS violated 37 U.S.C. § 1005 ("Army and Air

---

4. The Court includes this information merely to contextualize the origins of the debt at issue and does not make any factual findings, or draw any legal conclusions, regarding the circumstances surrounding Mr. Jordan's debt.  *Cf.* Pl. Reply at 7 (alleging that "[i]t is Plaintiff's sincere belief that the DOHA letter . . . has nothing to do with the issue at hand but was instead provided to in some [w]ay taint the Plaintiff's image and [/] or prejudice the Court against the Plaintiff").

4 It is unclear why Mr. Jordan represented November 27, 2014 as the end date of the debt collection in his complaint but listed October 27, 2014 as the end date in his amended complaint. The Court suspects a typographical error in the original complaint — particularly given that Mr. Jordan lists October 27, 2014 twice in his amended complaint — and proceeds with the understanding that the date in the amended complaint is the correct one.  This conclusion is supported by the fact that the government, in a declaration submitted along with its motion to dismiss, represents that DFAS collected the debt "from October 15, 2009 through October 29, 2014."  ECF No. 11-1, Declaration of Jeffrey Heiney, at 2–3.

Force: prompt payment required") by collecting the debt, is currently in arrears to Mr. Jordan, and owes Mr. Jordan interest, Am. Compl. ¶¶ 59–63; (3) DFAS used false supporting documents to create Mr. Jordan's debt, in violation of 10 U.S.C. § 1552 ("Correction of military records: claims incident thereto"), Am. Compl. ¶¶ 64–67; and (4) DFAS violated the federal claim collection standards outlined in 31 C.F.R. §§ 900–904 by reporting Mr. Jordan's debt to credit bureaus and a federal agency, Am. Compl. ¶¶ 68–73.  Mr. Jordan separately alleges that "DFAS violated 5 U.S.C. § 5514, by initiating collection actions before complying with the due process requirements for the statute" and "by deducting more than the maximum allowed [amount] of 15%." Am. Compl. ¶ 43.

In the alternative, Mr. Jordan requests that the Court transfer his case to the United States District Court for the District of Columbia should the Court grant the government's motion to dismiss.  Pl. Reply at 7.

## III.   THIS COURT LACKS JURISDICTION OVER MR. JORDAN'S CLAIM PURSUANT TO 28 U.S.C. § 2501

Mr. Jordan's claim is time-barred because he filed his complaint long after this Court's statute of limitations had run.  As noted above, this Court only has jurisdiction over claims that are "filed within six years after such claim first accrues." 28 U.S.C. § 2501.

A plaintiff's claim is considered "filed" for the purposes of § 2501 when that plaintiff files a complaint with this Court.  RCFC 3 ("A civil action is commenced by filing a complaint with the court.").  A claim accrues "against the government . . . 'when all the events have occurred which fix the liability of the Government and entitle the claimant to institute an action.'" *FloorPro, Inc. v. United States*, 680 F.3d 1377, 1381 (Fed. Cir. 2012) (quoting *Goodrich v. United States*, 434 F.3d 1329, 1333 (Fed. Cir. 2006)).  The question of "whether the pertinent events have occurred is determined under an objective standard; a plaintiff does not have to possess actual knowledge of all the relevant facts in order for the cause of action to accrue." *Id.* at 1381 (quoting *Fallini v. United States*, 56 F.3d 1378, 1380 (Fed. Cir. 1995)).  Accordingly, if a plaintiff files a claim more than six years after the events fixing the government's liability allegedly occurred, this Court lacks jurisdiction over the claim and must dismiss it.  To determine when Mr. Jordan's claim accrued for purposes of jurisdiction, this Court examines and accepts as true the undisputed facts in Mr. Jordan's complaint and amended complaint.  *See Trusted Integration*, 659 F.3d at 1163.

This Court determines that Mr. Jordan's claim accrued — at the latest — on October 9, 2009.  Mr. Jordan's suit, at its heart, and by its very terms, "seek[s] a reversal of the DFAS[] decision regarding an alleged debt."  Am. Compl. at 1;[5] *see also* Compl.

---

[5] The introductory paragraph of Mr. Jordan's amended complaint is unnumbered.

at 3 (requesting that this Court "order DFAS to release Plaintiff's military pay in the amount of $88,578.33"). Mr. Jordan represents that DFAS established that debt against Mr. Jordan, and began collecting it, on or before October 9, 2009. *See, e.g.*, Compl. at 2 ("On October 2, 2009, DFAS created or established a debt[.]"); Am. Compl. ¶ 43 ("From October 9, 2009, thr[ough] October 27, 2014, DFAS . . . initiat[ed] collection actions . . . ."); Am. Compl. ¶ 57 ("From October 2, 20[0]9 thr[ough] October 27, 2014, DFAS failed to deliver without deduction the basic pay to Plaintiff . . . ."). Mr. Jordan further concedes in his amended complaint that he was aware of the debt by October 9, 2009. Am. Compl. ¶ 36 ("On October 7, 2009, Plaintiff received a Leave and Earnings Statement ("LES") revealing that a collection action was initiated in his pay records in the amount of $750.00 per pay period for a travel debt of $106,051.21[.]"); Am. Compl. ¶ 46 (referencing "substantial communication from the Plaintiff disputing the debt" prior to October 2, 2009. In other words, by October 9, 2009, at the latest, "all the events ha[d] occurred that fix[ed] the alleged liability of the government and entitle[d] the claimant to institute an action." *Holmes v. United States*, 657 F.3d 1303, 1317 (Fed. Cir. 2011).[6]

   Because the Court concludes that Mr. Jordan's claim accrued on or before October 9, 2009, Mr. Jordan was required to have filed suit on or before six years from that date — *i.e.*, on or before October 9, 2015 — for his suit to fall within this Court's statute of limitations. *See* 28 U.S.C. § 2501. Mr. Jordan filed his suit on November 20, 2020, Compl. at 1, more than eleven years after his claim accrued, and more than five years after the statute of limitations had run.[7] Accordingly, this Court lacks jurisdiction over Mr. Jordan's claim pursuant to 28 U.S.C. § 2501 and must dismiss this case, including his amended complaint. The numerous contentions in Mr. Jordan's amended

---

[6] The conclusion that Mr. Jordan had all information necessary to file suit when DFAS established the debt is strengthened by the fact that Mr. Jordan already has filed multiple lawsuits on this issue. Am. Compl. ¶¶ 38–40; *see also* Am. Compl. ¶ 48 ("Plaintiff filed several [inspector general] and congressional complaints"); *Jordan v. Def. Fin. & Acct. Servs.* (*Jordan I*), 2014 WL 4416010, at *7 (M.D. Fla. Sept. 5, 2014) (dismissing many of Mr. Jordan's claims, filed pursuant to the Administrative Procedure Act, after finding "that the relief [Mr.] Jordan requests is. . . a refund of money he has paid towards his debt" and is thus "within the jurisdiction of the Court of Federal Claims"); *Jordan v. Def. Fin. & Acct. Servs.* (*Jordan II*), 744 F. App'x 692, 694 (11th Cir. 2018) (affirming a district court dismissal of the case Mr. Jordan filed after *Jordan I*, again seeking a refund of the money Mr. Jordan paid DFAS, and noting that 28 U.S.C. § 1491 "requires that non-tort claims against the United States for amounts in excess of $10,000 must be brought in the Court of Federal Claims").

[7] Moreover, even if the Court were to conclude that the statute of limitations only began to run as of the last alleged withdrawal from Mr. Jordan's paycheck on October 27, 2014, *see* Am. Compl. ¶¶ 43, 57, this Court would still lack jurisdiction over Mr. Jordan's claim, as he still would have had to file his current suit on or before October 27, 2020. 28 U.S.C. § 2501; *see also* discussion, *infra,* Section III.F.1 (holding that the continuing claims doctrine does not save Mr. Jordan's claim).

complaint all stem from the debt that DFAS established against Mr. Jordan in 2009 and thus his amended complaint — including all of his claims, no matter how framed — cannot avoid the statute of limitations. Nevertheless, the Court specifically addresses the four causes of actions as Mr. Jordan has alleged them in his amended complaint.

### A. First Cause of Action — Alleged Violations of the Military Pay Act

In Mr. Jordan's first cause of action, he alleges that the government violated the Military Pay Act, 37 U.S.C. § 204.[8] Am. Compl. ¶¶ 54–58. Specifically, Mr. Jordan contends that: (1) 37 U.S.C. § 204 is a money-mandating statute, Am. Compl. ¶ 55; (2) "[f]rom October 2, 20[0]9 thr[ough] October 27, 2014, DFAS failed to deliver without deduction the basic pay to Plaintiff," Am. Compl. ¶ 57; and (3) DFAS's "failure to deliver Plaintiff's basic pay as scheduled is a legal wrong, which created an arrearage in Plaintiff's pay account and records, which continues to accrue," Am. Compl. ¶ 58. As a result, Mr. Jordan claims, he "is entitled to seek review of DFAS'[s] actions" and "order DFAS to audit and reconcile Plaintiff's pay records and account and release accrued entitlements which have been withheld." *Id.*

As discussed above, the Tucker Act provides this Court with jurisdiction over money-mandating claims. *See, e.g.*, *Roth*, 378 F.3d at 1384. A money-mandating claim seeks money from the government based on a statute that "can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained." *Mitchell*, 463 U.S. at 217 (quoting *Testan*, 424 U.S. at 400). Mr. Jordan is correct that many provisions of the Military Pay Act are money-mandating, and this Court generally possesses jurisdiction over Military Pay Act claims. *See, e.g.*, *James v. Caldera*, 159 F.3d 573, 581 (Fed. Cir. 1998) ("As far as military personnel are concerned, 37 U.S.C. § 204 (1994) serves as a money-mandating statute."); *Antonellis v. United States*, 723 F.3d 1328, 1331 (Fed. Cir. 2013) ("We have long recognized that the Military Pay Act 'provides for suit in [the Court of Federal Claims] when the military, in violation of the Constitution, a statute, or a regulation, has denied military pay.'" (quoting *Dysart v. United States*, 369 F.3d 1303, 1315 (Fed. Cir. 2004))).

Even if the Military Pay Act is money-mandating for the purposes of Mr. Jordan's claim, however, this Court still lacks jurisdiction over this cause of action due to the applicable statute of limitations, 28 U.S.C. § 2501, and Mr. Jordan's attempt to reframe his claim in the terms of the Military Pay Act cannot change the fact that he filed his claim outside of that statute of limitations. Mr. Jordan's contention that DFAS

---

[8] The Military Pay Act provides that active duty uniformed servicemembers "are entitled to the basic pay of the pay grade to which assigned or distributed." 37 U.S.C. § 204(a). Mr. Jordan also argues that 37 U.S.C. § 1014 "establishes that amounts of basic pay . . . shall be paid on the first day of the month beginning after the month during which the right to such compensation accrues," though he does not contend that 37 U.S.C. § 1014 is money-mandating. Am. Compl. ¶ 56.

must "release accrued entitlements," Am. Compl. ¶ 58, for example, is simply another way of challenging the debt DFAS assessed against Mr. Jordan in 2009.  The Court thus agrees with the government that Mr. Jordan's first cause of action "ha[s] at [its] core the allegation that the United States wrongfully took monies from Mr. Jordan's military pay during the period October 9, 2009 through October 27, 2014" and that "regardless of the label, Mr. Jordan should have filed his complaint within six years" of the claim's accrual.  Def. Reply at 2.

Accordingly, even if the Military Pay Act is money-mandating in the manner Mr. Jordan asserts, this Court lacks jurisdiction over his first cause of action.

### B.  Second Cause of Action — Alleged Violation of 37 U.S.C. § 1005[9]

In Mr. Jordan's second cause of action, he contends that 37 U.S.C. § 1005 "is a money mandating statute which establishes that members of the Army and of the Air Force shall be paid at such times that arrears will at no time be more than two months[.]"  Am. Compl. ¶ 60.  Mr. Jordan also claims that "all DOD Components are required to . . . pay interest payments when payments are made late," that "DFAS is in arrears to Plaintiff for the entitlements which accrued from October 1, 2009 through October 27, 2014," and that DFAS accordingly owes Mr. Jordan interest on the allegedly invalid debt it withdrew from his paychecks.  Am. Compl. ¶¶ 61–63.

The Court notes that 37 U.S.C. § 1005 may be money-mandating in some circumstances, as Mr. Jordan contends, because the statute, on its face, requires the government to pay money to servicemembers within a given timeframe.  37 U.S.C. § 1005 ("Members . . . *shall* be paid . . . .") (emphasis added); *see also* Def. Reply at 2 (conceding that such "statute *requires* the military to pay service members" (emphasis added)).  Nevertheless, this is yet another attempt by Mr. Jordan to reframe his central claim in terms of another statute; at bottom, it remains a challenge to the debt that accrued in 2009 and thus falls outside of the applicable statute of limitations, *see* 28 U.S.C. § 2501, discussed *supra*.

The fact that Mr. Jordan frames this cause of action as an ongoing violation — alleging that interest continues to accrue on a purported arrearage, Am. Compl. ¶ 62 — does not provide this Court with jurisdiction.  Interest can only accrue upon a principal balance.  Mr. Jordan argues that the principal balance in his case is the alleged "arrearage" that arose when DFAS withdrew money from his paycheck.  Am. Compl.

---

[9] Mr. Jordan titles this cause of action "Violation of Promp[t] Payment Act."  Am. Compl. at 18.  The Prompt Payment Act, however, is codified at 31 U.S.C. §§ 3901–3905 and provides timelines for the government's payment of money owed to federal contractors.  While the Prompt Payment Act does not cover military pay, Mr. Jordan does cite to 37 U.S.C. § 1005 ("Army, Air Force, and Space Force: prompt payments required"), which provides military pay deadlines, and the Court addresses his claim pursuant to that statute.

¶¶ 62–63; *see also* Pl. Reply at 5 ("The arrearage in this context would be akin to the government having a valid debt against a debtor, the debt does not simply go away but rather accrues interest and is thus subject to collection until either it is paid, or disposed of[.]"). But the alleged arrearage would only arise if the debt DFAS established were invalid — something the Court lacks jurisdiction to determine given the statute of limitations. Because the Court lacks jurisdiction to consider Mr. Jordan's claims regarding the principal sum of the assessed debt, the Court also lacks jurisdiction to consider Mr. Jordan's claims for interest on that debt.

### C. Third Cause of Action — Correction of Military Records

In Mr. Jordan's third cause of action, he asks the Court to correct two forms that he alleges DFAS wrongly relied upon in assessing the debt at issue. Am. Compl. ¶¶ 64–67. Specifically, Mr. Jordan alleges that "there are two erroneous DD Form 139s in Plaintiff[']s military pay records, which were used to establish this invalid debt" and that the placement of these "false supporting documents" in Mr. Jordan's pay records "is an error."[10] Am. Compl. ¶¶ 66–67. Mr. Jordan requests that the Court "direct that these DD Form 139[]s be voided to correct Plaintiff's pay account and record." Am. Compl. ¶ 67. As authority for this claim, Mr. Jordan cites 10 U.S.C. § 1552, which he contends is money-mandating. Am. Compl. ¶ 65. The Court lacks jurisdiction over this cause of action as well.

As is the case with Mr. Jordan's first two causes of action, the statute of limitations similarly bars the Court's consideration of the validity of the DD Form 139s. In that regard, the only purpose of Mr. Jordan's challenge is to dispute the underlying debt for which the government collected money from Mr. Jordan and that he contends should be refunded to him. Am. Compl. ¶ 66 (citing "two erroneous DD Form 139s . . . which were used to establish this invalid debt"); Am. Compl. ¶ 67 (urging the Court to "direct that these DD Form 139[]s be voided to correct Plaintiff's pay account"). As discussed above, however, this Court lacks jurisdiction over Mr. Jordan's central claim regarding the debt at issue. Because this cause of action is merely another attempt to challenge that debt, the statute of limitations bars consideration of this cause of action. 28 U.S.C. § 2501.

Moreover, the Court lacks the power to correct Mr. Jordan's records independent of a valid, timely Tucker Act claim. Indeed, this Court only has the power to correct military records when doing so "as an incident of and collateral to" a monetary

---

[10] Neither Mr. Jordan nor the government specifies the purpose of DD Form 139, but the Department of Defense's Forms Management Program indicates that DD Form 139 is entitled "Pay Adjustment Authorization." *DoD Forms Management Program*, Wash. Headquarters Serv., https://www.esd.whs.mil/Directives/forms/dd0001_0499 (last updated Mar. 8, 2022). The Court accordingly proceeds under the assumption that the DD Form 139s Mr. Jordan references are involved in the determination and revision of military pay.

judgment.  28 U.S.C. § 1491(a)(2); *see also Piotrowski v. United States*, 722 F. App'x 982, 985 (Fed. Cir. 2018) ("[T]he Court of Federal Claims correctly held that it could not provide equitable relief to correct [Plaintiff]'s military records because the requested relief was not tied to a money judgment."); *Sergent's Mech. Sys., Inc. v. United States*, 157 Fed. Cl. 41, 46 (2021) ("The United States Court of Federal Claims does not have general authority to issue injunctive relief.").  This Court, however, lacks jurisdiction over the only money judgment that could possibly be related to modifying Mr. Jordan's records — *i.e.*, a finding that the government improperly assessed a $88,578.33 debt against Mr. Jordan.  *See* Am. Compl. ¶ 66 (alleging that the "two erroneous DD Form 139s . . . were used to establish this invalid debt").  Absent a money judgment, this Court lacks the ability to correct Mr. Jordan's military records.

Mr. Jordan's attempt to invoke 10 U.S.C. § 1552, which he contends is money-mandating, Am. Compl. ¶ 65, does not circumvent this jurisdictional barrier. The statute is not independently money-mandating.  *Martinez v. United States*, 333 F.3d 1295, 1315 (holding that "section 1552 is not the 'money-mandating' statute that gives rise to the cause of action that provides the basis for a Tucker Act suit in the Court of Federal Claims");[11] *McCord v. United States*, 943 F.3d 1354, 1359 (Fed. Cir. 2019) (noting that 10 U.S.C. § 1552 "itself is not a 'money-mandating' statute" and is money-mandating only "if a claimant was improperly denied benefits but became entitled to them under other provisions of law").  Indeed, 10 U.S.C. § 1552 only permits this Court to review decisions of various corrections boards; it does not provide an independent jurisdictional basis upon which this Court can enter a monetary judgment.  *See Porter v. United States*, 163 F.3d 1304, 1311 (Fed. Cir. 1998) ("Section 1552 of title 10 gives the *military secretaries* power to correct military records using civilian boards." (emphasis added)); *Richey v. United States*, 322 F.3d 1317, 1323 (Fed. Cir. 2003) ("If an officer elects to pursue a remedy before the Corrections Board, after the Board renders a final decision, the officer may effectively obtain review of that decision in the Court of Federal Claims by filing suit under the Tucker Act."); *Dysart*, 369 F.3d at 1315 ("The Corrections Board statute, 10 U.S.C. § 1552, provides for correction of military records . . . and for judicial review of the Board's decision.").  Accordingly, 10 U.S.C. § 1552 does not independently provide this Court with jurisdiction to correct Mr. Jordan's records.

In his response brief, Mr. Jordan argues that jurisdiction exists because he submitted an application for correction of his records to the Army Review Boards Agency ("ARBA") on June 6, 2021 — but that was more than six months *after* he

---

[11] *Cf. Martinez*, 333 F.3d at 1315 n.4 (listing the following two exceptions to the general rule that 10 U.S.C. § 1552 is not money-mandating, neither of which is at issue here:  "if the plaintiff should have been retired for disability but the Correction Board illegally failed to so find," and "when the correction board has granted relief and the service member seeks to enforce or challenge the implementation or scope of the remedial order" (citations omitted)).

submitted his complaint.  Pl. Resp. at 3.  Mr. Jordan asserts that "it is within the jurisdiction of this court to review the decision by the board," and, "[g]iven that a decision by the board has not occurred . . . this count cannot be time-barred because [the] statute of limitations cannot begin to run until . . . the board renders their decision."  *Id.* at 4.  Mr. Jordan further asserts that "it is within the purview of this Court to consider the matter" and that the Court can "rule in Plaintiff's favor if the evidence warrants such."  *Id.*

While Mr. Jordan is correct that this Court has jurisdiction to review decisions of corrections boards, *see, e.g.*, *Dysart*, 369 F.3d at 1315, there is no such decision before the Court for review.  Mr. Jordan concedes as much.  Pl. Resp. at 4.  Mr. Jordan's assertion in his response brief that he submitted an application for records correction does not provide the Court with jurisdiction over his third cause of action.

Perhaps anticipating this, Mr. Jordan asks the Court in his response brief to "stay this count pending the outcome of the board's decision."  Pl. Resp. at 4.  The Court declines to do so.  "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.  How this can best be done calls for the exercise of judgment, which must weigh competing interests[.]"  *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936).  When deciding a motion to stay, "[t]he Court must consider judicial efficiency and economy, determining whether a stay will resolve relevant issues and simplify the case."  *Braswell v. United States*, 155 Fed. Cl. 148, 150 (2021) (citing *Miccosukee Tribe of Indians of Fla. v. S. Fla. Water Mgmt. Dist.*, 559 F.3d 1191, 1196 (11th Cir. 2009)).  The Court has considered the competing interests in this case and concludes that no stay is warranted.  Mr. Jordan has been actively litigating these issues in various fora for years, *see* Am. Compl. ¶¶ 38–39, and had ample time to file an application for records correction.  Moreover, the Court fails to see how granting this stay would "resolve relevant issues" or "simplify the case" given that no board decision can change this Court's determination that the statute of limitations precludes Mr. Jordan's central claim for compensation.  In short, granting the requested stay would only delay the Court's inevitable decision that any and all of Mr. Jordan's claims relating to the debt at issue are time-barred.

Because Mr. Jordan's third cause of action is untimely, seeks a correction of records that is not "incident of and collateral to" a money judgment, 28 U.S.C. § 1491(a)(2), and because Mr. Jordan does not cite any other money-mandating statutory authority, the Court lacks jurisdiction over this cause of action.

### D.  Fourth Cause of Action — Alleged Violation of the Federal Claim Collection Standards

In Mr. Jordan's fourth cause of action, he alleges that the government violated the federal claim collection standards delineated in 31 C.F.R. §§ 900–904.  Am. Compl.

¶ 71 ("On April 6, 2015, DFAS violated 31 [C.F.R.] [§]§ 900–904 . . . by reporting an invalid debt to the credit bureaus without providing Plaintiff with the required statutory due process, required by federal statutes and regulations."); Am. Compl. ¶ 72 (alleging that "[i]n January 2020, Plaintiff discovered that DFAS had reported to the Department of Housing and Urban Development's Credit Alert Interactive Voice Response System (CAIVRS) that Plaintiff was delinquent on a federal debt" and that "DFAS'[s] failure to provide the required due [process] prior to reporting this invalid debt in this manner, is a violation of 31 [C.F.R.] [§]§ 900–904"). Mr. Jordan asserts that the federal claims collection standards are money-mandating, Am. Compl. ¶ 69, and that, as a result of these alleged violations, he "is entitled to seek review of DFAS['s] actions . . . and direct that DFAS promptly refund any money ultimately found not to have been owed to the Government," Am. Compl. ¶ 73.[12]

This Court lacks jurisdiction over Mr. Jordan's fourth cause of action because the federal claim collection standards are not money-mandating. As discussed above, the Tucker Act does not provide plaintiffs a substantive cause of action. *Fisher*, 402 F.3d at 1172. In money-mandating claims, plaintiffs must identify a law that "can fairly be interpreted as mandating compensation by the Federal Government for the damages sustained." *Mitchell*, 463 U.S. at 216. The Court has reviewed 31 C.F.R. §§ 900–904, and nowhere do the regulations grant Mr. Jordan "expressly or by implication[] a right to be paid a certain sum." *Eastport S.S. Corp.*, 372 F.2d at 1007. In fact, if anything, the provisions expressly preclude a money-mandating characterization:

> The standards in this chapter do not create any right or benefit, substantive or procedural, enforceable at law or in equity by a party against the United States, its agencies, its officers, or any other person, nor shall the failure of an agency to comply with any of the provisions of parts 900–904 of this chapter be available to any debtor as a defense.

---

[12] *See also* Compl. at 2 ("Additionally[,] DFAS is currently reporting this invalid debt to the three major credit reporting agencies in violation of 15 U.S.C. § 1692; The Fair Credit Reporting Act. . . . [T]he fact that . . . the [debt] is being reported to the three credit bureaus [is evidence that] this is an ongoing violation of 15 U.S.C. § 1692 subject to money mandated statutory penalties."). Mr. Jordan appears to have abandoned this alleged violation of the Fair Credit Reporting Act ("FCRA") in his amended complaint and subsequent filings, perhaps because the government (correctly) notes in its motion to dismiss that the FCRA "provides for civil remedies against debt collectors, [but] not the United States, in the district courts." Def. Mot. at 6 (citing *Dainja El v. United States*, 2017 WL 4639364, at *2 (Fed. Cl. Aug. 23, 2017)). To the extent that Mr. Jordan has not abandoned this claim, the Court finds it lacks jurisdiction over it and grants the government's motion to dismiss this claim as well. *Dainja El*, 2017 WL 4639364, at *2 (finding that 15 U.S.C. § 1692 "do[es] not provide a basis for jurisdiction in this Court").

31 C.F.R. § 900.8; *see also Confederated Tribes & Bands of The Yakama Nation v. United States*, 89 Fed. Cl. 589, 615 n.39 (2009) (concluding that "31 C.F.R. § 900.8 disallows private causes of action enforceable against the United States for failure to comply with 31 C.F.R. pts. 900–04"); *Zandford v. S.E.C.*, 2012 WL 628002, at *4 (D. Del. Feb. 27, 2012) ("[T]he regulations prohibit the Debtor from using these agency operating procedures as either a sword or a shield." (quoting *In re Zandford*, 2006 WL 2036990 (Bankr. D. Del. July 18, 2006))); *United States v. Warfield*, 2015 WL 1469545, at *4 (E.D. Mich. Mar. 30, 2015) (no cause of action for government's alleged failure "to comply with the Federal Claims Collection Standards, 31 C.F.R. § 900, *et seq.*"); *Care Origin, Inc. v. United States Dep't of Health & Hum. Servs.*, 2015 WL 6163577, at *3 (E.D. Mich. Oct. 20, 2015) ("[A]s Federal Defendants correctly point out, the Federal Claims Collection Act does not provide for a private right of action against the United States.").

Because 31 C.F.R. §§ 900–904 is not money-mandating, the Court lacks jurisdiction over Mr. Jordan's fourth cause of action. *Cf. Perry*, 149 Fed. Cl. at 17 ("[Plaintiff] cannot invoke this Court's jurisdiction to adjudicate his grievances merely by invoking Tucker Act language, such as 'contract,' 'taking,' 'damages,' or 'illegal exaction.'").

### E.   Illegal Exaction Claims

Illegal exaction claims are those alleging that "the [g]overnment has the citizen's money in its pocket." *Eastport S.S. Corp.*, 372 F.2d at 1008 (quoting *Clapp v. United States*, 127 Ct. Cl. 505, 512 (1954)); *see also Aerolineas Argentinas v. United States*, 77 F.3d 1564, 1572 (Fed. Cir. 1996) (describing illegal exaction claims as claims "made for recovery of monies that the government has required to be paid contrary to law"). In order "[t]o allege an illegal exaction within this Court's subject-matter jurisdiction, a complaint must contain nonfrivolous *factual* allegations that the plaintiff is entitled to recover money for the government's purported illegal action." *Gulley v. United States*, 150 Fed. Cl. 405, 418 (2020). An illegal exaction claim need not identify a money-mandating statute. *Boeing Co.*, 968 F.3d at 1384 (reviewing the illegal exaction jurisprudence of the United States Court of Appeals for the Federal Circuit, this Court's immediate appellate court, and concluding that the Court of Federal Claims can "assume[] jurisdiction over statutory illegal exaction claims with no regard for whether the statutes [a]re 'money-mandating'"); *see also Perry*, 149 Fed. Cl. at 32 (holding that "there is no basis to engraft money-mandating requirements onto illegal exaction claims").

Mr. Jordan repeatedly describes his causes of action as money-mandating. Am. Compl. ¶ 55 (first cause of action); Am. Compl. ¶ 60 (second cause of action); Am. Compl. ¶ 65 (third cause of action); Am. Compl. ¶ 69 (fourth cause of action); Compl. at 2 (describing "an ongoing violation . . . subject to money mandated statutory penalties"). But this Court's "jurisdictional determination is not governed by the plaintiff's characterization of its claims." *Perry*, 149 Fed. Cl. at 13. Accordingly, the Court has reviewed the many allegations in Mr. Jordan's complaint and amended

14

complaint through the lens of illegal exaction and concludes that some of his allegations generously may be construed as illegal exaction claims.[13]  This characterization, however, does not change the Court's conclusion that it lacks jurisdiction over Mr. Jordan's amended complaint due to the statute of limitations, as explained above.  *See* 28 U.S.C. § 2501.  The applicable statute of limitations makes no exceptions for illegal exaction claims even where otherwise properly pled.  *Adera v. United States*, 155 Fed. Cl. 553, 558 (2021) (dismissing illegal exaction claim for, *inter alia*, lack of jurisdiction pursuant to 28 U.S.C. § 2501).

For example, taking as true Mr. Jordan's assertions and assuming only for the sake of deciding jurisdiction that DFAS indeed established the debt in violation of 37 U.S.C. § 1007, *see* Compl. at 2, Mr. Jordan still alleges that this violation occurred when the debt was established in October 2009 — more than six years before he filed his complaint.  Compl. at 2; 28 U.S.C. § 2501.  Similarly, even taking as true Mr. Jordan's claim that DFAS violated 5 U.S.C. § 5514 up to and including October 27, 2014, Am. Compl. ¶ 43, this Court would lack jurisdiction because Mr. Joran filed his complaint more than six years after October 27, 2014.  Compl. at 1; 28 U.S.C. § 2501.

Accordingly, the Court finds that it lacks jurisdiction over Mr. Jordan's central claim and subsidiary causes of action no matter how characterized.

### F.  Various Exceptions to 28 U.S.C. § 2501

The Federal Circuit recognizes several exceptions to the six-year statute of limitations in 28 U.S.C. § 2501.  Mr. Jordan asserts many of them in an attempt to save his case.  None of those exceptions, however, apply here to preclude the application of the statute of limitations to Mr. Jordan's claims.

---

[13] *See, e.g.*, Compl. at 2 ("DFAS . . . alleg[ed] that the debt was created under the authority [of] 37 U.S.C. § 1007, but the debt and collection could not have been established under this statute[.]"); *id.* ("On October 2, 2009, DFAS created or established a debt without specific legal authority and over the course of the next 5 plus years (through on or about November 27[,] 2014) unlawfully withheld $88,578.33 from plaintiff's current military pay in violation of 5 U.S.C. § 5514"); Am. Compl. ¶ 26 ("DFAS violated Volume 7 Chapter 50 of Department of Defense Financial Management Regulation policy and improperly established an invalid debt[.]"); Am. Compl. ¶ 41 ("DFAS did not adhere to the guidance in [Department of the Army Pamphlet] 27-50-309 and violated Volume Chapter 37 of the [Department of Defense Financial Management Regulation], which . . . resulted in the creation of a debt without legal merit."); Am. Compl. ¶ 43 ("From October 9, 2009 thr[ough] October 27, 2014, DFAS violated 5 U.S.C. § 5514, by initiating collection actions before complying with the due process requirements for the statute[.]").

## 1.  The Continuing Claims Doctrine

Mr. Jordan contends that the continuing claims doctrine pushes at least part of his claim to within the statute of limitations. Am. Compl. ¶¶ 57–58 (claiming that DFAS's "withholding of the Plaintiff's basic pay creates a continuing arrearage which accrues the first of each month" and "continues to accrue"); Am. Compl. ¶ 62 (claiming that "interest began to accrue" years ago on the money DFAS allegedly owes to Mr. Jordan and "each month a new interest amount accrues creating a new entitlement"); Pl. Reply at 1 ("Considering the fact that violations have continued throughout the statutory period relating to the underlying debt, there is no way that the Plaintiff's complaint can be time barred."); Pl. Reply at 5 ("[A]s long as there is an arrearage there is a continuing violation.").

The continuing claims doctrine allows a plaintiff to include in its allegations some events that occurred outside the six-year statute of limitations if the plaintiff "ha[s] pled a series of distinct events — each of which gives rise to a separate cause of action — as a single continuing event." *Ariadne Fin. Servs. Pty. Ltd v. United States*, 133 F.3d 874, 879 (Fed. Cir. 1998).  In such a case, "the continuing claims doctrine operates to save later arising claims even if the statute of limitations has lapsed for earlier events." *Id.*  For the doctrine to apply to save an otherwise untimely claim, the claim must be "inherently susceptible to being broken down into a series of independent and distinct events or wrongs, each having its own associated damages." *Wagstaff v. United States*, 105 Fed. Cl. 99, 112 (2012) (quoting *Tamerlane, Ltd. v. United States*, 550 F.3d 1135, 1145 (Fed. Cir. 2008)).  The doctrine does not apply, however, to claims "based upon a single distinct event, which may have continued ill effects later on." *Brown Park Ests.-Fairfield Dev. Co. v. United States*, 127 F.3d 1449, 1456 (Fed. Cir. 1997); *see also Ariadne Fin. Servs.*, 133 F.3d at 879 ("[T]he continuing claims doctrine does not apply to a claim based on a single distinct event which has ill effects that continue to accumulate over time.").

Case law draws sharp boundaries around the doctrine's application.  In *Hart v. United States*, 910 F.2d 815 (Fed. Cir. 1990), for example, the Federal Circuit held that the doctrine did not apply to a military widow who sought monthly ongoing survivor benefits to which she was legally entitled because she waited more than six years to file her claim. *Id.* at 816.  In that case, the government was required by statute to notify the plaintiff of her husband's decision to not participate in the plan; the government's failure to so notify the plaintiff "automatically enrolled" her husband in the plan and entitled the plaintiff to monthly ongoing financial benefits beginning the day after her husband died. *Id.* at 818.  The plaintiff argued that she had "a new claim each month," *id.*, but she waited more than six years to file suit, *id.* at 816.  As a result, the Federal Circuit held that the statute of limitations barred her claim, and the continuing claims doctrine did not save her claim for ongoing monthly benefits — despite her legal entitlement to them — because "all events fixing the government's liability to his widow had occurred" the day after her husband died. *Id.* at 818.

Similarly, in *Davis v. United States*, 550 F. App'x 864 (Fed. Cir. 2013), the Federal Circuit held that the continuing claims doctrine did not save the claim of a discharged Army servicemember who sought ongoing periodic payments stemming from an allegedly unlawful discharge but who filed suit 20 years after the discharge occurred. *Id.* at 865. In that case, the Federal Circuit characterized the fact that the plaintiff, Mr. Davis, "continue[d] to argue the merits of the alleged wrongful discharge as the basis for the relief sought" as "an apparent admission that the discharge initiated the claim." *Id.* at 866.

In contrast, in *Wells v. United States*, 420 F.3d 1343 (Fed. Cir. 2005), the Federal Circuit held that the continuing claims doctrine saved the claim of a Naval retiree who challenged monthly deductions from his retirement pay, alleging that each deduction constituted a separate constitutional violation. *Id.* at 1344, 1346. In that case, the plaintiff, Mr. Wells, was a retired Navy servicemember who was convicted on drug-related charges a year after retiring. *Id.* at 1344. In addition to being sentenced to prison, Mr. Wells was ordered to pay a cost-of-incarceration fine, which the government deducted from his monthly retirement pay. *Id.* More than six years after the fine was first imposed, Mr. Wells filed suit, alleging that the monthly deductions exceeded the withholding limit of 15% of disposable income specified in 5 U.S.C. § 5514. *Id.* at 1345. More specifically, he alleged "that 5 U.S.C. § 5514 [wa]s violated each month" such that each monthly deduction constituted an independent statutory violation. *Id.* at 1346–47. The Federal Circuit applied the continuing claims doctrine: "Wells' claim can be broken down into a series of independent and distinct wrongs or events — deducting more than 15% of Wells' retirement pay — each such wrong or event having its own associated damages." *Id.* at 1347. The Federal Circuit did *not* hold that Mr. Wells was entitled to challenge the entire amount of the penalty; instead, the Federal Circuit held only that the Court of Federal Claims had jurisdiction over "those claims accruing within six years of the date [Mr. Wells] filed suit in the trial court." *Id.* at 1347–48.

The continuing claims doctrine does not save Mr. Jordan's amended complaint. As discussed above, Mr. Jordan's central claim that DFAS established an improper debt accrued at latest in October 2009, when DFAS had established the debt. Mr. Jordan received notice of the collection action and monthly withholdings from DFAS, and DFAS began withholding money from Mr. Jordan's pay. Compl. at 2; Am. Compl. ¶¶ 36, 57. At that point, all the events had occurred "that fix[ed] the alleged liability of the government" regarding the validity of the debt DFAS established. *Holmes*, 657 F.3d at 1317. Mr. Jordan's claim disputing the validity of the DFAS debt more closely resembles the claim at issue in *Davis* than the claim at issue in *Wells*; just as Mr. Davis "continue[d] to argue the merits of the alleged wrongful discharge as the basis for the relief sought, an apparent admission that the discharge initiated the claim," *Davis*, 550 F. App'x at 866, Mr. Jordan continues to attempt to litigate the validity of the DFAS debt, Am. Compl. ¶¶ 26, 57, 66. In light of the Federal Circuit's having declined to

17

apply the continuing claims doctrine to Mr. Davis's claim, this Court cannot apply it to save Mr. Jordan's claims here.

Moreover, even if Mr. Jordan's claims somehow were comparable to those at issue in *Wells*, Mr. Jordan alleges repeatedly that the last day DFAS deducted any money from his pay was October 27, 2014. Am. Compl. ¶¶ 43, 57, 61. Thus, even if Mr. Jordan were correct that each pay deduction constituted a separate statutory violation, the statute of limitations governing a claim related to the last pay deduction would have run six years after October 27, 2014 — specifically, on October 27, 2020. *See* 28 U.S.C. § 2501. But, as noted above, Mr. Jordan filed his complaint after that, on November 20, 2020. *See* Compl. at 1.

### 2. The Accrual Suspension Rule

Mr. Jordan argues that the accrual suspension rule preserves his claim despite the statute of limitations. Pl. Resp. at 1 ("Also under the Accrual Suspension Rule where the government has undertaken acts of concealment of material facts, the statute of limitation[s] cannot begin to accrue, until those facts are made known to the aggrieved party."). Specifically, Mr. Jordan claims that his amended complaint contains "violations" that "occurred within the six-year window" and "came to light during the statutory period," *id.*, and that the government "concealed the existence of documents in [Mr. Jordan's] records that needed correcting and [Mr. Jordan] did not know of their existence until February 2016," *id.* at 4. Mr. Jordan makes similar allegations of concealment in his amended complaint. Am. Compl. ¶ 40 ("In late January 2016, Plaintiff began receiving information pursuant to Rule 26 of the Federal Rules of Civil Procedure . . . reveal[ing] that Defendants had undertaken a coordinated cover up concealing material facts making inherently unknowable that certain claims or causes of action existed."); Am. Compl. ¶¶ 46–54 ("History of Actions to Conceal Material Facts of Invalid Debt").

The accrual suspension rule delays a claim's accrual date "until the claimant knew or should have known that the claim existed." *Martinez*, 333 F.3d at 1319; *see also Young*, 529 F.3d at 1385 ("It is a plaintiff's knowledge of the facts of the claim that determines the accrual date."). To invoke the accrual suspension rule, a plaintiff must show either: (1) that the government concealed its actions such that the plaintiff was unaware of the actions; or (2) that the injury was "'inherently unknowable' at the accrual date." *Martinez*, 333 F.3d at 1319 (quoting *Welcker v. United States*, 752 F.2d 1577, 1580 (Fed. Cir. 1985)).

The Federal Circuit has long held that this "rule is strictly and narrowly applied." *Welcker*, 752 F.2d at 1580. For example, in *Martinez v. United States*, 333 F.3d 1295 (Fed. Cir. 2003), the Federal Circuit held that the accrual suspension rule did not save the claim of a discharged Army Reserve officer who brought suit in the Court of Federal Claims regarding his discharge more than six years after his discharge occurred

but less than six years after new evidence regarding the discharge came to light. *Id.* at 1300, 1319. The Federal Circuit rejected Mr. Martinez's argument that his claim's accrual should have been suspended until the date that the new evidence concerning his claim came to light, holding:

> Mr. Martinez was not unaware of the existence of his injury and the acts giving rise to his claim. As of the date of discharge from active duty, he knew that he had been discharged and, as far as he was concerned, his discharge had been unlawfully procured. *Nothing about [the new evidence] disclosed the existence of a claim of which he was previously unaware.* The statement simply provided him with additional ammunition with which to pursue the claim.

*Id.* at 1319 (emphasis added).

In contrast, the Federal Circuit applied the accrual suspension rule in *Holmes v. United States*, 657 F.3d 1303 (Fed. Cir. 2011). In that case, the plaintiff-appellant, Mr. Holmes, had reached several settlement agreements — including one in 1996 and another in 2001 — with the Navy regarding various employment disputes. *Id.* at 1306–08. In 2006, Mr. Holmes learned when he requested copies of his personnel files that the Navy had violated the terms of the 1996 agreement. *Id.* at 1308. In 2009, Mr. Holmes brought suit in this Court, alleging that he was unable to obtain employment because the Navy violated the terms of the 1996 and 2001 agreements. *Id.* The Court granted the government's motion to dismiss, holding, among other things, that Mr. Holmes was on "inquiry notice" of the Navy's alleged violations as early as 1999 for the 1996 agreement, because at that time he had been unable to obtain employment and "believed this was due to the Navy's breach." *Id.* at 1318.

On appeal before the Federal Circuit, Mr. Holmes argued that the Navy's alleged breach was "inherently unknowable." *Id.* at 1318. The Federal Circuit noted that the "concealed or inherently unknowable" test contains "an intrinsic reasonableness component." *Id.* at 1320 ("An example of [an inherently unknowable injury] would be when defendant delivers the wrong type of fruit tree to plaintiff and the wrong cannot be determined until the tree bears fruit. In this situation the statute will not begin to run until plaintiff *learns or reasonably should have learned* of his cause of action." (alteration in original) (quoting *Japanese War Notes Claimants Association v. United States*, 373 F.2d 356, 359 (Ct. Cl. 1967))). The Federal Circuit held that the accrual suspension rule saved Mr. Holmes's claim because his complaint alleged facts relating to, among other things, a statement the Navy sent to a prosecutor's office in July 2001 that the Navy had begun performing the 1996 agreement. *Id.* at 1321. The Federal Circuit held that under the circumstances, it was reasonable for Mr. Holmes "to conclude that the Navy's execution of the 1996 agreement, along with its partial performance thereof,

could have provided the basis" for Mr. Holmes to believe that the Navy had performed the 1996 agreement.  *Id.* at 1322.

The accrual suspension rule cannot save Mr. Jordan's claim because he fails to allege facts demonstrating either government concealment or that his injury was inherently unknowable.  *See Martinez*, 333 F.3d at 1319.  Regarding concealment, while Mr. Jordan makes conclusory allegations of an ongoing government coverup, Am. Compl. ¶¶ 52–54,[14] his amended complaint makes plain that the government did *not* conceal the existence of Mr. Jordan's debt or the government's collection process, Am. Compl. ¶¶ 16–35 (describing Mr. Jordan's participation in a years-long process of investigating his alleged lodging fraud and establishing the debt); Am. Compl. ¶ 36 (noting that Mr. Jordan received written notice of the "collection action [being] initiated in his pay records" on October 7, 2009).

Mr. Jordan's claims also fail the "inherently unknowable" test.  *Martinez*, 333 F.3d at 1319.  Mr. Jordan contends that "there is no way that Plaintiff could have known that a claim for the correction of records was needed" because the government "concealed the existence of documents" about which Mr. Jordan "did not know . . . until February 2016."  Pl. Resp. at 4.  The Federal Circuit, however, has held that "[i]t is a plaintiff's knowledge of *the facts of the claim* that determines the accrual date."  *Young*, 529 F.3d at 1385 (emphasis added).  Here, Mr. Jordan has been aware of the debt, and has been actively disputing its validity, for years (as early as July 10, 2009).  *See* Am. Compl. ¶¶ 16–35; *see also* Am. Compl. ¶ 46 (referencing "substantial communication from the Plaintiff disputing the debt" prior to October 2, 2009).  This is not a case, as in *Holmes*, where the substance of the plaintiff's claim was reasonably unknowable until certain facts came to light.  657 F.3d at 1322.  Mr. Jordan alleges instead a situation analogous to that of *Martinez*, in which new facts arise related to, and in addition to, the facts establishing the claim (and regarding which Mr. Jordan has long been aware).  333 F.3d at 1319 ("Mr. Martinez was not unaware of the existence of his injury and the acts giving rise to his claim. . . . The acts of alleged fabrication may have contributed to Mr. Martinez's injury, *but the fact of his injury was never unknown to him*." (emphasis added)).  Just as the Federal Circuit rejected Mr. Martinez's accrual suspension argument in that case, this Court rejects Mr. Jordan's argument here.

### G.  Request to Transfer

Mr. Jordan's reply brief contains a request, in the alternative, to transfer this case to "[t]he United States District Court, District of Columbia, under the authority of 28

---

[14] Mr. Jordan alleges that "[b]ased on the Rule 26 [d]isclosures [from Mr. Jordan's 2015 lawsuit in the Middle District of Florida,] Defendants are still concealing material facts relevant to the establishment and collection of the debt," Am. Compl. ¶ 52, and that "[t]he most disturbing aspect of this case is that now the Department of Justice is a part of this cover up," Am. Compl. ¶ 54.

U.S.C. § 1631[.]"  Pl. Reply at 7.  Because Mr. Jordan's case does not meet the standards
for transfer, the Court denies Mr. Jordan's request.

A court may transfer a case over which it lacks jurisdiction in particular
circumstances:

> Whenever a civil action is filed in a court . . . and that court
> finds that there is a want of jurisdiction, *the court shall, if it is*
> *in the interest of justice, transfer such action or appeal to any other*
> *such court . . . in which the action or appeal could have been brought*
> *at the time it was filed or noticed*, and the action or appeal shall
> proceed as if it had been filed in or noticed for the court to
> which it is transferred on the date upon which it was actually
> filed in or noticed for the court from which it is transferred.

28 U.S.C. § 1631 (emphasis added).

In other words, "the Court 'shall' transfer an action to another federal court
when:  (1) the transferring court finds it lacks jurisdiction; (2) the proposed transferee
court is one in which the case could have been brought at the time it was filed; and
(3) the transfer is in the interest of justice."  *Space Expl. Techs. Corp. v. United States*, 144
Fed. Cl. 433, 445 (2019).

The statute does not permit this Court to transfer Mr. Jordan's case because no
proposed transferee court, including the one Mr. Jordan suggests, would have had
jurisdiction over Mr. Jordan's claims at the time he filed his case.  As discussed above,
the heart of all of Mr. Jordan's claims and counts is the refund he seeks in the amount of
$88,578.33.  *See, e.g.*, Compl. at 2.  But "the Court of Federal Claims has *exclusive*
*jurisdiction* over claims for monetary damages against the United States amounting to
more than $10,000."  *Philbert v. United States*, 779 F. App'x 733, 734–35 (Fed. Cir. 2019)
(emphasis added); *see also Henderson v. United States*, 152 Fed. Cl. 460, 469 (2021) ("[T]he
Court of Federal Claims has exclusive jurisdiction over claims in excess of $10,000 that
arise under the Tucker Act.").  This Court thus provides the sole venue for Mr. Jordan's
claims, assuming they are properly and timely pled.  Indeed, other district courts have
dismissed Mr. Jordan's previous cases, which sought a refund of the same money he
seeks in this case, because such claims belong in this Court.[15]  Accordingly, this Court
finds that transfer pursuant to 28 U.S.C. § 1631 would be improper here because no
federal district court would have jurisdiction to hear any of Mr. Jordan's claims
regarding the sums at issue.

---

[15] *See* cases cited *supra* note 6.

Even if Mr. Jordan's amended complaint could be construed to seek something other than a monetary refund — a contention this Court rejects[16] — Mr. Jordan's claim (and his subsidiary causes of action) would be time-barred in other courts for all of the reasons explained *supra*. *See* 28 U.S.C. § 2401(a) ("Except as provided by chapter 71 of title 41, every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues.").[17]

Finally, if Mr. Jordan were to attempt to bring his claims in district court, such claims likely would be barred by collateral estoppel in any event. *See Jordan II*, 744 F. App'x at 694 ("We agree with the district court's conclusion that Counts I–III, V, and VII were barred by the collateral estoppel doctrine. These claims attempted to relitigate the unappealed prior judgment in [*Jordan I*].").

For the foregoing reasons, the Court will not transfer Mr. Jordan's case to the district court.

## CONCLUSION

For the above reasons, the Court **GRANTS** defendant's motion to dismiss. Plaintiff's complaint is **DISMISSED** for lack of subject-matter jurisdiction pursuant to RCFC 12(b)(1).

The clerk is directed to enter **JUDGMENT** accordingly.

**IT IS SO ORDERED.**

s/Matthew H. Solomson
Matthew H. Solomson
Judge

---

[16] Again, all of Mr. Jordan's claims have at their heart a request to refund the $88,578.33 debt. Am. Compl. ¶¶ 58, 62, 67, 73. Mr. Jordan himself characterizes his suit this way. Pl. Resp. at 2 ("On November 20, 2020, Plaintiff filed this action *for the improper withholding of his military pay*[.]" (emphasis added).

[17] Chapter 71 of Title 41 of the United States Code references the Contract Disputes Act, Pub. L. No. 95-563, 92 Stat. 2383 (1978) (codified at 41 U.S.C. §§ 7101–7109), which does not apply in this case, but, in any event, similarly contains a six-year timeliness requirement.